**FILED**
**United States Court of Appeals**
**Tenth Circuit**

### UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**November 30, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

---

LAMONE M. JOHNSON, a/k/a Marylin
Monae Porter,

      Plaintiff - Appellant,

v.

LUKE PETTIGREW, Interim Warden; A.
MONDEN, Unit Manager; LEO BROWN,

      Defendants - Appellees.

No. 22-6015
(D.C. No. 5:20-CV-00764-R)
(W.D. Okla.)

---

### ORDER AND JUDGMENT[*]

---

Before **HOLMES**, Chief Judge, **HARTZ** and **ROSSMAN**, Circuit Judges.

---

Lamone M. Johnson, a/k/a Marylin Monae Porter (Plaintiff), is an Oklahoma

state prisoner proceeding pro se. She filed a civil rights action under 42 U.S.C.

§ 1983 against prison officials because she has not been permitted to marry another

Oklahoma prison inmate. Plaintiff appeals the district court's grant of summary

judgment in favor of defendants and its dismissal without prejudice of her complaint

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

based upon her failure to exhaust her administrative remedies.  Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.     Background

Plaintiff is a transgender woman who wishes to marry her fiancé, a gay man

incarcerated at a different Oklahoma prison.  According to prison officials, Plaintiff

and her fiancé have not been allowed to marry because they have not completed

certain prerequisites under the prison marriage policy.  Plaintiff contends that

defendants have unlawfully discriminated against her based upon her LGBTQ status.

### A.     Procedural History

Plaintiff filed this § 1983 action claiming violations of her rights to substantive

due process and equal protection.  Defendants are Luke Pettigrew, the Warden at the

Joseph Harp Correctional Center (JHCC); A. Monden, a Unit Manager at JHCC; and

Leo Brown, the Agency Chaplain.

Defendants moved to dismiss Plaintiff's operative complaint.  Among other

grounds for dismissal, they argued she failed to exhaust her administrative remedies

before filing suit, as required by the Prison Litigation Reform Act, 42 U.S.C.

§ 1997e(a) (PLRA).  In response, Plaintiff contended that prison officials prevented

her from exhausting her administrative remedies.

A magistrate judge issued a report and recommendation (R&R) on defendants'

motions.  Because defendants relied on documents outside of the complaint, the R&R

recommended converting the motions to dismiss to motions for summary judgment.

Focusing on the exhaustion issue, the R&R reviewed three grievances Plaintiff had

filed related to her efforts to marry her fiancé.  The R&R concluded the prison's administrative remedies were available to Plaintiff, but that she did not fully or correctly complete the grievance process as to any of the three grievances.  The R&R therefore recommended that the district court grant summary judgment in favor of defendants.  After reviewing Plaintiff's objections de novo, the district court partially adopted the R&R, granted summary judgment in favor of defendants, and dismissed Plaintiff's complaint without prejudice.

### B.    Prison Grievance Procedure

Under the Oklahoma Department of Corrections (ODOC) grievance procedure, inmates must follow a multi-step process to fully exhaust a grievance.  The steps include:  (1) an attempt at informal resolution, including a Request to Staff (RTS); (2) a grievance submitted to the reviewing authority (RA); and (3) a grievance appeal submitted to the administrative review authority (ARA).  Each RTS, grievance, and appeal must be correctly completed according to the written policy.  A noncompliant grievance or appeal will not be answered, but an inmate may be permitted to resubmit the grievance or appeal to correct errors.

Grievances and grievance appeals must also be timely submitted according to the deadlines in the ODOC process.  A grievance must be submitted to the RA within fifteen days from the date the inmate receives a response to the RTS.  And an appeal must be received by the ARA within fifteen days of the inmate's receipt of the RA's response.  There is no "mailbox rule" under the ODOC grievance procedure for the submission of grievances and appeals.  Thus, "[t]he documents must be received by

the proper authority in the appropriate office within the required time frame[, and] [t]ime frames will not be considered met by mere deposit of the documents in the mail." R. at 390.

The ODOC process is shortened for emergency or sensitive grievances, which are submitted directly to the RA or to the ARA if the complaint involves the RA. A sensitive grievance is one that "alleges misconduct by a staff member who either directly supervises the inmate/offender or is the reviewing authority where the inmate/offender is assigned." *Id.* at 403.

If an inmate is deemed to have abused the ODOC grievance process, she will be placed on grievance restriction. A restricted inmate must submit with any new grievance and grievance appeal an affidavit listing every grievance submitted by the inmate in the previous twelve months and indicating the number assigned and the date, description, and disposition at each level of the process. If the inmate fails to submit a compliant affidavit, the new grievance will not be answered.

"The ruling of the ARA is final and will conclude the internal administrative process available to the inmate/offender within the jurisdiction of ODOC. The inmate/offender will have satisfied the exhaustion of internal administrative remedies required by Oklahoma [law]." *Id.* at 402.

### C.    Plaintiff's Grievances

Plaintiff submitted three grievances related to her efforts to marry her fiancé. She was on grievance restriction at the relevant time, so she was required to submit

with her grievances and grievance appeals an affidavit listing all of the grievances she had submitted during the preceding twelve months.

### 1.    Grievance 20-065

Plaintiff submitted an RTS to the Chaplain at JHCC stating that she wanted to marry her fiancé and asking for assistance with obtaining a marriage license.  The Chaplain responded stating, "I provided the necessary form to you to fill out and send to the fiancé to complete and send to the Agency Chaplain, Leo Brown." *Id.* at 442.  Plaintiff then submitted grievance 20-065.  The RA returned the grievance unanswered because (1) she failed to submit the required grievance affidavit, (2) she had used the wrong form, and (3) the Chaplain had provided information and the necessary forms in response to her RTS.

Plaintiff submitted a grievance appeal to the ARA, along with an affidavit listing previous grievances.  The ARA responded that the appeal was improperly filed because Plaintiff's affidavit was not accurate and failed to comply with the grievance policy.  A copy of Plaintiff's affidavit submitted with her appeal bears a sticky note stating, "Affidavit missing 'sensitive' grievance ARA 20-085 5/12/20 – Back page <u>not</u> signed and notarized." *Id.* at 449.  The ARA gave plaintiff ten days from her receipt of the ARA's response to resubmit a corrected appeal.  Plaintiff received the ARA's response no later than July 10, the date she signed her resubmitted appeal.  The ARA did not receive her resubmitted appeal until July 27.  The ARA responded that it was improperly filed because (1) Plaintiff's affidavit was not accurate and failed to comply with the grievance policy, and (2) her resubmitted

appeal was untimely.  A copy of Plaintiff's affidavit submitted with her resubmitted appeal bears a sticky note stating, "Affidavit missing:  ARA 20-085 'sensitive' grievance 5/12/20."  *Id.* at 527.

### 2.    Grievance 20-090

Plaintiff submitted an RTS to the Chaplain at JHCC asking for a list of LGBTQ-friendly clergy for her wedding ceremony.  The Chaplain responded stating, "I do not have a list.  You would have to find one.  I don't have that information." *Id.* at 454.  Plaintiff then submitted grievance 20-090.  She did not include an affidavit listing her previous grievances.  The RA returned the grievance unanswered because (1) Plaintiff was on grievance restriction and she did not provide proper documentation, and (2) the issue was not grievable.  Plaintiff received the RA's response on June 30.

Plaintiff submitted a grievance appeal to the ARA, along with an affidavit listing previous grievances.  The ARA did not receive the appeal until July 23.  The ARA responded that the appeal was filed improperly because (1) it was received out of time by the ARA, and (2) Plaintiff's affidavit was not accurate.  A copy of Plaintiff's affidavit submitted with her appeal bears a sticky note stating, "Affidavit missing:  ARA 20-085 'sensitive' grievance 5/12/20."  *Id.* at 458.  Plaintiff submitted a request to appeal out of time, claiming the mail room delayed her mail due to the COVID-19 pandemic.  That request was denied.

### 3.    Grievance 20-131

Plaintiff submitted an RTS to the Warden asking to be allowed to correspond with her fiancé so that she could send him a marriage application for him to fill out his portion.  The Warden denied her request, citing a policy prohibiting correspondence between inmates without approval and stating that Plaintiff's fiancé was not on her approved visitors list, as required by another policy.  Plaintiff then submitted grievance 20-131.  The RA denied the grievance on the same grounds, adding that Plaintiff's fiancé must be on her approved visitors list at least six uninterrupted months prior to the application for marriage.

Plaintiff submitted a grievance appeal to the ARA.  The ARA responded that the appeal was filed improperly because she had not submitted an affidavit listing her previous grievances.  The ARA gave Plaintiff a final opportunity to properly resubmit her corrected appeal within ten days of her receipt of the ARA's response.  Plaintiff took no further action.

## II.    Discussion

Plaintiff argues the district court erred in granting summary judgment in favor of defendants because prison officials prevented her from fully exhausting her administrative remedies.  We review the district court's summary judgment decision de novo, including its finding of a failure to exhaust administrative remedies.  *See May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019).  Because failure to exhaust is an affirmative defense, defendants bore the burden to show the Plaintiff did not complete the grievance process, but she must show that the remedies were

unavailable to her. *See Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011). We liberally construe Plaintiff's pro se appellate briefs. *See Cummings v. Evans*, 161 F.3d 610, 613 (10th Cir. 1998).[1]

Exhaustion of administrative remedies is mandatory under the PLRA and "unexhausted claims cannot be brought in court." *Thomas v. Parker*, 609 F.3d 1114, 1117 (10th Cir. 2010) (internal quotation marks omitted). "Because the prison's procedural requirements define the steps necessary for exhaustion, an inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure." *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (citation omitted). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies. The doctrine of substantial compliance does not apply." *Thomas*, 609 F.3d at 1118 (citation, brackets, and internal quotation marks omitted). But the PLRA only requires the exhaustion of administrative remedies "as are available." 42 U.S.C. § 1997e(a). And "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little*, 607 F.3d at 1250. Plaintiff argues the ODOC grievance procedure was

---

[1] Plaintiff also purports to appeal the denial of her right to marry another inmate, but the district court did not reach the merits of her underlying claims, so there is no merits ruling for her to appeal.

unavailable to her because prison officials prevented her from complying with the process.

### A.    Refusal to Provide a Grievance Log

Plaintiff contends that she could not file an accurate affidavit of her previous grievances because the Grievance Coordinator at JHCC refused her request for a grievance log.  On April 15, 2020, Plaintiff submitted an RTS to the Grievance Coordinator asking for a grievance log.  The Grievance Coordinator responded on April 24 stating, "I do not have any past grievances for you in the past 12 months here @ JHCC.  You will need to request from other facilities about any other grievances, that is your responsibility."  R. at 867.

Plaintiff does not cite any policy requiring the provision of grievance logs to inmates, but she maintains it is customary to do so and that she had obtained grievance logs at another prison that listed her past grievances from all facilities. Despite her not obtaining a log from the Grievance Coordinator at JHCC, the record shows that Plaintiff was still able to list all of her relevant past grievances, including those from previous facilities, with one exception:  grievance 20-085, the grievance that the RA and ARA noted was missing from the affidavits she submitted.

Grievance 20-085 was a sensitive grievance Plaintiff had submitted directly to the ARA.  There is little information in the record regarding that grievance. Someone affixed sticky notes to affidavits that Plaintiff submitted with her

grievances and appeals related to her marriage request. Those notes indicated that grievance 20-085 was missing and referenced May 12, 2020.

The district court rejected Plaintiff's contention that the Grievance Coordinator's refusal to provide her with a grievance log caused her failure to exhaust grievance 20-065. The court concluded that, had the Grievance Coordinator provided Plaintiff with a log in April 2020 when she requested it, the log would not have included grievance 20-085, which the ARA did not receive until May 12, 2020. Plaintiff argues that the court erred by failing to apply "tolling" to the grievance process she pursued related to the Grievance Coordinator's denial of a grievance log. After her RTS was denied, Plaintiff submitted grievance 20-067, which the RA returned unanswered on May 29, 2020, because she failed to submit a grievance affidavit and the issue was not grievable. She asserts that the RA could have instead granted her relief on May 29, in which case she would have received a log that included grievance 20-085. But Plaintiff did not make this argument in her objections to the R&R. She instead tied her failure to exhaust in this case to the Grievance Coordinator's denial of her RTS for a grievance log in April, which she emphasized was before she submitted grievance 20-065. Plaintiff therefore waived appellate review of the argument she now raises on appeal. *See Soliz v. Chater*, 82 F.3d 373, 375-76 (10th Cir. 1996) (holding that specific appellate arguments not raised in objections to R&R are waived). We conclude that the interests of justice do not support an exception to our firm waiver rule in this case. *See Casanova v.*

*Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010) (discussing the factors relevant to determining whether to apply the interests-of-justice exception).

### B.    Lack of Knowledge of the Missing Sensitive Grievance

Plaintiff claims that she never received a response to sensitive grievance 20-085, so she was not aware of the number the ARA assigned to it and did not have the necessary information (number, date, description, and disposition at each level) that she was required to include in her affidavits.  She explains that she was not aware of the sticky notes referencing grievance 20-085 because she received only the response forms from the RA and the ARA, and she did not learn which grievance was missing from her affidavits until defendants filed their motions to dismiss in this case.  Plaintiff claims that the prison officials' failure to provide her a response to grievance 20-085 ultimately prevented her from being able to submit a complete affidavit in order to properly exhaust her administrative remedies.

The district court credited Plaintiff's evidence of her lack of knowledge regarding grievance 20-085.  *See Tuckel*, 660 F.3d at 1251 (requiring courts to view the evidence in the light most favorable to the non-moving party on summary judgment).[2]  The court nonetheless concluded these facts did not affect its summary judgment analysis because Plaintiff's incomplete affidavit was not the sole basis on

---

[2] On appeal, defendants continue to insist that Plaintiff learned that grievance 20-085 was missing from her affidavits based upon the sticky notes affixed to them by a prison official.  They ignore that the district court specifically disagreed with the R&R's conclusion on that point.  *See* R. at 878 n.6.

which the ARA returned her appeals unanswered.  The district court pointed to the untimeliness of Plaintiff's resubmitted appeal regarding grievance 20-065.  She now argues that resubmitted appeal was timely, but she did not raise that contention in her objections to the R&R so it is waived on appeal.  *See Soliz*, 82 F.3d at 375-76.[3] Plaintiff does not dispute that her appeal regarding grievance 20-090 was also deemed untimely.  Finally, Plaintiff failed to resubmit her appeal regarding grievance 20-131, as directed by the ARA.[4]  Plaintiff does not demonstrate that the district court erred in concluding that, to the extent her incomplete affidavits were attributable to the actions of prison officials, they were not ultimately the cause of her failure to exhaust her administrative remedies.

---

[3] In any event, it is unclear why Plaintiff believes her resubmitted appeal regarding grievance 20-065 was timely.  She received the ARA's initial response no later than July 10, 2022, the date she signed her resubmitted appeal.  She was given ten days to resubmit her appeal.  The ARA received the resubmitted appeal on July 27, more than 10 days later.  Plaintiff notes that the Medical Services Administration received her resubmitted appeal on July 22, but even if that receipt were relevant, it was still untimely.

[4] The ARA deemed Plaintiff's appeal of grievance 20-131 as improperly filed because she did not submit an affidavit.  The district court rejected Plaintiff's contentions that (1) the grievance procedure prohibited her from attaching anything to her appeal, and (2) her affidavit had been forwarded to the ARA electronically along with her RTS and grievance.  As the court noted, the grievance policy allows an inmate to attach an affidavit to an appeal where required, and the affidavit is not one of the documents electronically forwarded to the ARA upon an appeal.  *See* R. at 400.  Although the ARA gave Plaintiff an opportunity to refile the appeal, she did not do so.

## III.    Conclusion

The district court's judgment is affirmed.  Plaintiff's motions for a temporary restraining order and for the appointment of counsel on appeal are denied.  Her motion to proceed on appeal without prepayment of fees and costs is granted.

Entered for the Court

Jerome A. Holmes
Chief Judge